IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRITTON CHRISTINE HENDERSON,** | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 1:23-cv-01314-JRR |
| **TOWER FEDERAL CREDIT UNION,** *et al.*, | * | |
| | * | |
| *Defendants.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This matter comes before the court on Defendants Tower Federal Credit Union ("TFCU"), Erica Thomas, Veronica Jones, and Alice Nworah's Motion to Dismiss. (ECF Nos. 9, 9-1; together, "the Motion"). The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

**I.   BACKGROUND**[1]

*Pro se* Plaintiff Britton Henderson filed this action alleging that Defendants discriminated and retaliated against her on the basis of race and gender during her employment at TFCU in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). (ECF Nos. 1 and 5.) Plaintiff is an African American female employee at TFCU. (ECF No. 5 at

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pleaded facts set forth in the Complaint and the Amended Complaint. (ECF Nos. 1 and 5; collectively, "the Complaint"). The court notes that Plaintiff filed a Complaint followed by an Amended Complaint, which the court construes as a supplement to the Complaint. Therefore, the court will consider the two together. *See Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 U.S. Dist. LEXIS 18223, at *6 (D. Md. Feb. 8, 2017) (explaining that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers").

5-6.)² Defendant Thomas is the Assistant Vice President in Consumer Loans at TFCU. *Id.* at 2. Defendant Jones is the Underwriting Supervisor at TFCU. *Id.* at 3. Defendant Nworah is the TFCU's Assistant Vice President of Employee Relations. *Id.*

Plaintiff alleges that, in 2017, Thomas suspended her and subsequently treated Plaintiff unfairly and denied her promotions to positions for which she is qualified. (ECF No. 1 at 6.) In 2018, 2019, and 2020, according to Plaintiff, Thomas told another TFCU manager not to promote Plaintiff and to find a reason to disqualify her. (ECF No. 1 at 6; ECF No. 5 at 5.) Plaintiff alleges that she has "a degree" and, although she has "the experience," she is "always declined promotion." (ECF No. 5 at 6.) Jones interviewed Plaintiff on two occasions for another position and stated that she knew Plaintiff was qualified for the position but that "management is against it." *Id.* at 7. In 2019, a white woman was "hired over" Plaintiff. *Id.* at 6. At an undefined time, "another white woman" was "hired over" Plaintiff even though that person had "no experience" and Plaintiff "assisted with training her." . *Id.* In 2022, a white male was hired but only stayed with TFCU for a few months because he "didn't [sic] like management". *Id.*

Plaintiff further alleges that Thomas "harasses all black females" in her department. (ECF No. 5 at 6.) Thomas follows Plaintiff to the bathroom, stands outside the office to stare at her, and makes Plaintiff feel uncomfortable when nobody is watching. (ECF No. 5 at 7.) Thomas has also made negative comments about Plaintiff. *Id.* at 8. Throughout 2019 and 2020, Plaintiff met with Nworah, who agreed that Thomas treated black woman poorly. (ECF No. 5 at 6.)

On May 11, 2021, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge, which was dual-filed with the Prince George's County Human Relations

---

² Throughout this memorandum opinion, citations to document page numbers refer to the page number assigned by the ECF system, not pagination within the original source.

2

Commission. (ECF No. 9-2 at 2.)³ Plaintiff alleges that she received a Notice of Right to Sue letter but does not provide the date on which she received it.⁴ *Id.*

On May 18, 2023, Plaintiff filed the Complaint. (ECF No. 1.) On July 5, 2023, Plaintiff filed the Amended Complaint. (ECF No. 5; as mentioned above, the court refers to these filings together as the "Complaint"). Construed liberally, Plaintiff's claims are as follows: (1) Discrimination Based on Race; (2) Discrimination Based on Gender; (3) Hostile Work Environment; and (4) Retaliation. (ECF No. 1 at 4-5; ECF No. 5 at 4-5.) Plaintiff seeks "to be compensated 10 years of [her] salary." (ECF No. 1 at 7.)

---

³ In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). "In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)); *see Yampierre v. Balt. Police Dep't*, No. CV ELH-21-1209, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (considering a copy of the plaintiff's EEOC charge in resolving motion to dismiss); *U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

Exhibit 1 to the Motion is Plaintiff's EEOC charge. (ECF No. 9-2.) Plaintiff references the EEOC charge in her Complaint; Plaintiff's entitlement to sue arises from the EEOC charge; and she makes no authenticity challenge. Accordingly, the court considers the EEOC charge without converting the Motion into one for summary judgment.

⁴ While Plaintiff alleges that she has received a right-to-sue letter, she does not indicate when she received it. The Supreme Court in *Fort Bend County, Texas v. Davis*, concluded that "Title VII's charge-filing requirement is not a jurisdictional cast" and "[i]nstead, Title VII's charge-filing provisions 'speak to . . . a party's procedural obligations.'" 139 S. Ct. 1843, 1850-51 (2019) (quoting *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014)). In light of *Fort-Bend*, "[c]ourts now treat the Title VII charge-filing requirement as an affirmative defense, which defendants must raise." *Spearman v. City of Annapolis*, No. JKB-21-1779, 2022 WL 316641, at *4 (D. Md. Feb. 1, 2022). "Because the charge-filing requirement is an affirmative defense (as opposed to a jurisdictional issue), Plaintiff is not required to allege facts sufficient to establish that [s]he satisfied this requirement." *Id.* at *5. Thus, while Plaintiff does not expressly allege when she received a right-to-sue letter, the allegations before the court suggest that Plaintiff should have received a right-to-sue letter with respect to the EEOC charge filed in May 2021. *See Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426 (D. Md. 2013) (explaining that "[t]he EEOC is statutorily required to provide a right-to-sue notice to a complainant within, at the latest, 240 days after a claim of discrimination is filed").

On September 7, 2023, Defendants filed the Motion. (ECF No. 9.) Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* Defendants argue that Plaintiff's claims against Defendants Thomas, Jones, and Nworah are subject to dismissal because there is no individual liability for managers under Title VII. (ECF No. 9-1 at 5-6.) Defendants further argue that Plaintiff failed to exhaust her administrative remedies for the gender-based discrimination claim. *Id.* at 6-8. Additionally, Defendants argue that Plaintiff's race-based discrimination claim should be dismissed as untimely. *Id.* at 8-11. Lastly, Defendants argue that Plaintiff's hostile work environment claim is subject to dismissal because it is untimely and fails to state a claim. *Id.* at 11-17.

## II.     **LEGAL STANDARD**

**Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Rule 12(b)(6) "tests the legal sufficiency of a complaint." It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is ". . . not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244 (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979)).

4

**III.     ANALYSIS**

As an initial matter, the court is ever-mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented." *Id.*

Liberally construing Plaintiff's Complaint, Plaintiff alleges three forms of discrimination under Title VII: (1) failure to promote; (2) hostile work environment; and (3) retaliation.

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326-27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, [she] may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to *McDonnell Douglas*, Plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

### A. Individual Liability

Defendants argue, and Plaintiff does not dispute, that Plaintiff's Title VII claims against Defendants Thomas, Jones, and Nworah are subject to dismissal because "supervisors are not liable in their individual capacities for Title VII violations." (ECF No. 9-1 at 5; citing *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998)). The court agrees with Defendants.

It is well-established that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau*, 159 F.3d at 180; *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 425 (D. Md. 2013) (dismissing Title VII claim against individual supervisor); *Tibbs v. Baltimore City Police Dep't*, No. CIV.A. RDB-11-1335, 2012 WL 3655564, at *6 (D. Md. Aug. 23, 2012) (dismissing plaintiff's gender discrimination and retaliation claims against individual defendants on the basis that the individual defendants "are not individually liable under Title VII for the alleged wrongful conduct against [the] [p]laintiff"). Therefore, the only proper Defendant in this case is Plaintiff's employer, TFCU. *See Weathersbee*, 970 F. Supp. 2d at 425 ("An individual person can only be liable under Title VII if that person qualifies as an 'employer' within the meaning of the statute."); *Lewis v. Senior Lifestyle*, No. CV GLR-23-43, 2023 WL 8478901, at *1 n.3 (D. Md. Dec. 7, 2023) (noting that "the only proper defendant in a Title VII case is the employer, Senior Lifestyle, not its individual employees"). Accordingly, the Motion will be granted as to Defendants Thomas, Jones, and Nworah.

### B. Title VII Exhaustion and Timeliness

Defendants argue that Plaintiff did not file an administrative charge alleging gender-based discrimination, and, therefore, Plaintiff's Title VII gender-based discrimination claim should be

dismissed for failure to exhaust. (ECF No. 9-1 at 6-8.) As to Plaintiff's race-based discrimination claim, Defendants argue that Plaintiff did not timely file an administrative charge. *Id.* at 8-12.

### 1. *Exhaustion*

Title VII requires a plaintiff to exhaust administrative remedies prior to bringing suit in court. *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) (explaining that "[i]t is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC"). Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").

An EEOC charge serves two important purposes: (1) "it notifies the charged party of the asserted violation" and (2) "it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law." *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984). In *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013), the court clearly explained the EEOC process:

> An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge. This assistance often includes drafting a charge—as it did here—and then asking the employee to sign it.
>
> The EEOC sends a notice and copy of the charge to the employer. This notice gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory actions internally. Concurrently, the EEOC investigates the charge.

> The filing of a charge also "initiates agency-monitored settlement, the primary way that claims of discrimination are resolved." This procedure "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." Prior to making any determination as to the merit of a charge, the EEOC may encourage and facilitate settlement between the parties.
>
> If the EEOC finds "reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." If the EEOC cannot reach a voluntary settlement with the employer, the agency may file a lawsuit or issue a Notice–of–Right–to–Sue to the employee. If the EEOC does not make a reasonable cause determination or the employee requests a right to sue, the agency may issue one, thus allowing the employee to file suit.

*Id.* at 407 (internal citations omitted). The exhaustion requirement, therefore, is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). It "serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust [her] administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or ADEA] lawsuit.

*Id.* at 172. With this in mind, the court also recognizes that "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

Here, Plaintiff filed the EEOC charge on May 11, 2021. (ECF No. 9-2 at 2.) In her charge of discrimination, Plaintiff states she "was discriminated against because of [her] race." (ECF No. 9-2 at 2.) Specifically, Plaintiff alleged:

> I. I began my employment with the above-named employer on June 1, 2015, as a Collector[.]
>
> II. My current position is Loan Processor. Throughout my employment similarly situated less qualified white individuals have been selected over me for promotion. Throughout my employment, I have been subjected to harassment by Assistant Vice President Erica Thomas (white). Ms. Thomas has denied me to make up time that I have missed; Suspended me on false pretenses; and Reminded me to put on a sweater. I believe Ms. Thomas is the reason I'm denied promotion.
>
> II. Respondent hasn't provided a reasonable explanation for why I wasn't selected me for promotion.
>
> III. I believe I was discriminated against because of my race (black), color with respect to denial of promotion and harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 9-2 at 2.) The EEOC charge contains no factual allegations to suggest that Plaintiff believed Defendants discriminated against her on the basis of her gender. Accordingly, the Motion will be granted as to Plaintiff's gender-based discrimination for failure to exhaust administrative remedies.[5] *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (noting that "the

---

[5] The court notes that Plaintiff also contends that Defendants discriminated against her on the basis of race by retaliating against her. Similar to Plaintiff's gender-based discrimination claim, however, the EEOC charge contains

plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex").

### 2. *Timeliness*

Defendants also argue that Plaintiff's Title VII race-based discrimination claims involving failure to promote and hostile work environment are subject to dismissal because Plaintiff's allegations that form the basis for these claims occurred more than 300 days prior to the filing of the EEOC charge. (ECF No. 9-1 at 8-12.)

Pursuant to 42 U.S.C. § 2000e–5(e)(1), a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct. 42 U.S.C. § 2000e–5(e)(1). "This period is extended to 300 days in a deferral state, one in which 'state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (4th Cir. 2007) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)). Maryland is a deferral state; therefore, "plaintiff cannot recover 'for discrete acts of discrimination or retaliation' that occurred outside of the 300-day limitations period." *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 484 (D. Md. 2016) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). "By contrast, hostile work environment claims often arise from repeated conduct that may occur over 'a series of days or perhaps years.'" *Booth*, 186 F. Supp. 3d at 485 (quoting *Morgan*, 536 U.S. at 115). "A court thus may consider a hostile work environment claim 'so long as an act

---

no factual allegations of any sort to suggest that Plaintiff believed Defendants retaliated against her or that might give rise to a claim for same. *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (affirming dismissal of Title VII retaliation claim where the administrative charged alleged only age discrimination). The court notes that "a plaintiff may raise for the first time in federal court the claim that her employer retaliated against her for filing with the EEOC in violation of Title VII." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014) (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)). Here, however, even construed liberally, no facts are alleged in the Complaint to form the basis of a retaliation claim. To the extent Plaintiff alleges Defendants unlawfully discriminated against her on the basis of race by retaliating against her for the filing of the EEOC charge, the retaliation claim is subject to dismissal as discussed below. *See* Section III.D, *infra.*

contributing to that hostile work environment takes place' within 300 days of the filing of the charge." *Id.* (quoting *Morgan*, 536 U.S. at 105).

As to her failure to promote claim, Plaintiff alleges incidents that occurred in 2017, 2018, 2019, and May 2020 (ECF No. 1 at 5; ECF No. 5 at 5) but Plaintiff did not file her EEOC charge until May 11, 2021. Therefore, Plaintiff may not pursue relief for discrete acts arising more than 300 days before May 11, 2021 (*i.e.*, July 15, 2020). Because the alleged incidents related to Plaintiff's failure to promote claim occurred prior to July 15, 2020, Plaintiff's failure to promote claim is subject to dismissal. Although Plaintiff alleges an incident that occurred in 2022, (ECF No. 5 at 6), "[c]ourts in this district assume that discrimination claims must be exhausted by a later charge." *Brooks v. United Parcel Serv. Inc.*, No. CV DKC 20-2617, 2021 WL 4339194, at *6 (D. Md. Sept. 23, 2021) (citing *Sharpe v. Prince George's Cnty.*, TDC-17-3799, 2021 WL 928177, at *10 (D. Md. Mar. 11, 2021) and *Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *6 (D. Md. Jan. 3, 2018)). There is nothing before the court to suggest that Plaintiff filed a later EEOC charge with regard to the incident in 2022. Accordingly, the Motion will be granted as to Plaintiff's Title VII failure to promote claim.

As to Plaintiff's hostile work environment claim, the court cannot determine whether the alleged incidents contributing to Plaintiff's hostile work environment claim took place within 300 days of the filing of the EEOC charge because Plaintiff does not identify dates on which the incidents occurred, or timeframes during which she contends the incidents occurred. (ECF No. 5 at 6-7.) Construing the Complaint broadly and permissively at this stage, the court declines to dismiss Plaintiff's hostile work environment claim on the basis of untimeliness.

C. **Hostile Work Environment**

Defendants argue that even if the court considers Plaintiff's hostile work environment

11

claim, the claim should be dismissed because Plaintiff fails to sufficiently allege an objectively severe or pervasive hostile work environment. (ECF No. 9-1 at 12.)

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e–2(a)(1) (2000). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986)).

To maintain a claim for hostile work environment, Plaintiff must allege "that the harassment was (1) unwelcome, (2) based on [Plaintiff's race]; (3) sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive atmosphere, and (4) imputable to [the employer]." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174-75 (4th Cir. 2009). "[A] complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-Evans*, 780 F.3d at 585 (quoting *Bell Atlantic Corp. v . Twombly*, 550 U.S. 544, 555 (2007)).

Generally, "viable hostile work environment claims [] involve repeated conduct . . . however, an 'isolated incident[]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). In analyzing whether an environment is hostile or abusive, the court considers all of the alleged circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The conduct "which gives rise to an abusive work environment must be both objectively and subjectively 'hostile' and 'abusive.'" *McIver v. Bridgestone Americas, Inc.*, 42

F.4th 398, 407 (4th Cir. 2022).

The subjective component of the severity/pervasiveness element requires the employee to personally "believe that the conduct rises to the level of a hostile environment;" the objective component requires the employee to "reasonably believe that the conduct rises to the level of a hostile environment." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 331 (4th Cir. 2018). The objective inquiry focuses on "whether the harassing conduct was objectively 'severe or pervasive,'" in light of "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris*, 510 U.S. at 23). "[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *Id.* (quoting *Faragher*, 524 U.S. at 788). Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *see Dangerfield v. Johns Hopkins Bayview Med. Ctr., Inc.*, No. CV JKB-19-155, 2019 WL 6130947, at *3 (D. Md. Nov. 19, 2019) (explaining that "[w]orkplace interactions which are merely 'disrespectful, frustrating, critical, and unpleasant' do not create a hostile work environment") (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished)).

In *E.E.O.C. v. Sunbelt Rentals*, the Fourth Circuit explained the standard as follows:

> Title VII does not establish a general civility code for the American workplace. This is because, in order to be actionable, the harassing conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment . . . . Our circuit has likewise recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test. Workplaces are not always harmonious

> locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.

521 F.3d at 315-16 (internal quotation marks and citations omitted).

*Bass v. E.I. DuPont de Nemours & Co.* is instructive. 324 F.3d 761 (4th Cir. 2003). There, the plaintiff contended that she was not required to plead facts to support her hostile work environment claim and, therefore, the district court improperly dismissed it. *Id.* at 764. The Fourth Circuit disagreed, and explained:

> The Supreme Court has recently admonished that the requirements of notice pleading are not onerous. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In *Swierkiewicz v. Sorema*, the Court held that a complaint in an employment discrimination lawsuit need not allege specific facts establishing a prima facie case of discrimination. *Id.* at 510–11, 122 S.Ct. 992. In other words, a plaintiff is not charged with "forecast[ing] evidence sufficient to prove an element" of her claim. *Iodice*, 289 F.3d at 281 (emphasis omitted). Our circuit has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir.2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)); *Iodice*, 289 F.3d at 281. These cases reject Bass' contention. While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.
>
> With that understanding, we turn to Bass' complaint to determine whether she has alleged facts sufficient to state the elements of her claims of hostile work environment based on gender, race, and age. Bass' complaint is full of problems she experienced with her co-

14

> workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment. In fact, Bass' only allegations in support of her claim that deal with gender, race, or sex are as follows: She states that "[p]laintiff an African American female was consistently paid less than and consistently did not advance as fast as similarly situated white men." J.A. 25. In the claims section of her complaint, Bass asserts that DuPont engaged in the various acts of which she complains "because of her race and sex," J.A. 29, and later, "age," *id.*
>
> To state a hostile work environment claim, Bass must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). We think that Bass has failed to allege facts sufficient to support at least the second and third elements of her hostile work environment claim. Even viewed in the light most favorable to Bass, the facts she alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim. Bass was required to plead facts in support of her claim, and she had failed in that regard.

324 F.3d 761, 764-65 (4th Cir. 2003). Accordingly, the *Bass* court concluded that dismissal of the plaintiff's hostile work environment claim was proper. *Id.* at 766.

Here, Plaintiff's hostile work environment claim is based on Thomas following her to the bathroom, making her feel uncomfortable, harassing all black females, and stating negative comments about her. (ECF No. 5 at 6-8.) Plaintiff fails to allege facts sufficient to support the second and third elements of a hostile work environment claim. Plaintiff does not allege facts to suggest that the alleged incidents with Thomas occurred because of her race. *See Bass, supra* (noting that the plaintiff's complaint is "full of problems she experienced with her co-workers and supervisors" but the allegations "do not seem to have anything to do with gender, race, or age harassment"); *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (noting that "Title

VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex'"); *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (affirming dismissal of hostile work environment claim where the plaintiff failed to state that any harassment, she suffered was due to her race or gender); *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 600 (D. Md. 2018) (concluding that even if the plaintiff sufficiently alleged conduct that constituted a hostile work environment, he failed to state that such conduct was based on his race); *Engler v. Harris Corp.*, No. CIV.A. GLR-11-3597, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) (finding that the plaintiffs' hostile work environment claims fail because the plaintiffs "rely on conclusory recitations of general statements regarding the nature of the environment, but fail to point to any specific factual allegations that the harassment was based on their sex"); *see also Bazemore v. Best Buy*, No. CV PJM 18-264, 2018 WL 3117542, at *3 (D. Md. June 25, 2018), *aff'd*, 957 F.3d 195 (4th Cir. 2020) (explaining that "[g]eneral allegations of racial slurs, without specific references to detail, context, date, or circumstances, are insufficient to establish a hostile work environment").

Further, Plaintiff's allegations involving the incidents with Thomas do not amount to a legally-cognizable abusive working environment. *See Buchhagen v. ICF Intern., Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (holding that allegations of the plaintiff's supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harping on a mistake" made by the plaintiff, "making snide comments," "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing [plaintiff's] use of leave and compliance with [the supervisor's] directives . . . . falls far short of being severe or pervasive enough to establish an abusive environment" (internal alterations omitted)); *Chang Lim*, 310 F. Supp. 3d at 599 (finding

that the allegations primarily involving "denials of requests to supervisors, negative evaluations of [plaintiff's] job performance, and emails from colleagues criticizing [the plaintiff] for being insensitive and exclusionary" do not describe legally cognizable severe or pervasive harassment).

Here, Plaintiff "alleges no physically threatening conduct, abusive communication, or even raised voices in his description of each of the above incidents," *Chang Lim*, 310 F. Supp. 3d at 599; nor does Plaintiff allege the frequency of such conduct. *See McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022) (noting that "a hostile-work-environment claim's 'very nature involves repeated conduct'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002))). Rather, the Complaint alleges discrete acts that at most amount to "callous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000). *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"); *Dangerfield v. Johns Hopkins Bayview Med. Ctr., Inc.*, No. CV JKB-19-155, 2019 WL 6130947, at *3 (D. Md. Nov. 19, 2019) (explaining that "[w]orkplace interactions which are merely 'disrespectful, frustrating, critical, and unpleasant' do not create a hostile work environment") (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished)). Accordingly, Plaintiff fails to state a claim for hostile work environment and the Motion will be granted in this aspect.

### D. Retaliation

Construed liberally, Plaintiff also alleges that Defendants retaliated against her in violation of Title VII. To state a claim for retaliation, Plaintiff must allege that (1) she engaged in a protected

activity; (2) her employer took an adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action.[1] *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). "An adverse employment action is one that 'a reasonable employee would have found . . . materially adverse' such that 'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 670-671 (D. Md. 2008) (quoting *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007)).

While the filing of an EEOC charge constitutes a protected activity, *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994); *Battle v. Burwell*, No. PWG-14-2250, 2016 WL 4993294, at *13 (D. Md. Sept. 19, 2016), Plaintiff fails to allege any facts to state a retaliation claim. (Indeed, it is unclear whether Plaintiff even contends that Defendants retaliated against her for filing of the EEOC charge.) Plaintiff also fails to allege the requisite adverse employment action and causal link between the EEOC charge and the adverse employment action. Accordingly, Plaintiff's retaliation claim is subject to dismissal.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 9) will be granted.

/S/

_____
Julie R. Rubin
United States District Judge

April 22, 2024